Whenever you're ready. Thank you, Your Honor. Ben Loveman for the petitioner, Mr. Armando Bajacan. Today we're here to talk about Mr. Bajacan's case. What he sought in this case was one opportunity to have his immigration petition, his immigrant visa petition that was filed on his behalf by his U.S. citizen wife, fully and fairly considered before the judge ordered him removed. He was denied that opportunity, and when the judge denied him that opportunity, he did so without considering the proper factors in the case. He only considered two factors. He considered the length of time and the amount of continuances, maybe the government's position as well on the motion for continuance. But this was an error. This Court's precedent requires more. Before turning to those issues, I would like to state what Mr. Bajacan is seeking from the Court today. Of course, ideally, Mr. Bajacan is seeking remand and reconsideration of both the I-130 immigrant visa petition and the denial of the continuance, finding that both of those decisions are erroneous. But we recognize there is a jurisdictional issue on the immigrant visa petition, so if the Court determines that there is no jurisdiction over that issue or decides that there is but doesn't overturn that decision, we would ask that this case be remanded to the judge so that Mr. Bajacan can have the opportunity to qualify for voluntary departure before the immigration judge. And that's a right that he lost because of the denial of the continuance, and I'll get to that a little bit later. So I'm going to start by focusing on the denial of the continuance and the prejudice that he suffered. Those are the two main issues I'd like to address first. I mean, you're welcome to do that, but I guess I just am going to have a hard time listening to that because in the back of my mind I'll be saying, well, but if you don't win on the visa denial, then the denial of the continuance is sort of irrelevant, right? If the visa petition was properly denied, then there couldn't have been any prejudice from not getting the continuance because that's all you were waiting for or your client was waiting for, right? So that is my second point about the prejudice, and I'd be happy to start there. What we're asking for is remand for voluntary departure. And this is a right that the judge offered to him, to Mr. Bajacan, and that he turned down. But I thought there was some issue that the government raised with that. Was it exhaustion? I can't remember now. Exhaustion may very well be an issue about that, and I can address that as well. So the primary issue of prejudice all along was, okay, so if you overturn this I-130, we'll go back and we'll be able to apply for adjustment of status before the judge. So all along, Mr. Bajacan and his counsel before are focused on that issue. Now, meanwhile, the BIA is holding his appeal for five years, so he's not thinking about anything else. He doesn't know, and he doesn't, importantly, he doesn't know at the time that he has to decide whether or not to accept voluntary departure or not, if he'll be able to comply with that voluntary departure order and also see his appeal out on the I-130. He doesn't know how long this appeal is going to take, and ultimately it takes, what, five years. So that is the prejudice that he suffered. And the issue wasn't raised before the BIA before, but given that everyone was focused on the prejudice of the, you know, potential of the I-130 being approved, then he loses his opportunity for adjustment of status. I think the Court, and it's purely a legal issue, this prejudice issue, I think the Court can accept it here, and there was no real reason for him to raise it before the BIA when the other issue remained there so prominently. And that's the prejudice that we think he suffered in this case, the loss of opportunity. Kagan. The prejudice from what? From the denial of the continuance much later? I'm a little confused, like, how you get what the claim is that that is the prejudice for. So he's sitting at his last hearing in September of 2008, and he's asking for a continuance. The judge is telling him, I'm going to deny this continuance. Now the judge tells him, do you want voluntary departure? Let's see if you qualify. And he turns to his counsel, talks to his counsel. His counsel recommends, in my opinion, that he doesn't accept voluntary departure. And he does so because if he does, and he doesn't comply with that order later, he'll be subject to strict penalties, harsh penalties, including 10 years bar on adjustment of status and other bars under the Immigration Act. So he forgoes that opportunity there because he doesn't know if he'll be able to stay and see his appeal out, which he wants to see. Him and his wife want to be able to have one opportunity to see if he can stay here and make this case work. So he decides at that point that he's going to go that route instead of accepting voluntary departure. If he's granted the continuance and allowed to stay until, you know, put off that decision until the appeal is decided, then this prejudice doesn't result because he can take voluntary departure knowing that his appeal has been denied or he can make an informed decision. But so you're saying that there should have been a continuance of the decision about whether to seek voluntary departure or agree to voluntary departure. It's not the continuance that the main issue here is about. No, no, no. That's not what I'm saying. I'm saying that the case certainly should have been continued for the purposes of allowing him to wait for the appeal from the I-130. And that's the main issue that was denied at the hearing. And that's what we're talking about. But the prejudice he suffered is that he lost the opportunity to apply for voluntary departure at that time because he had to choose between the two. That happened before, didn't it? When did he decide not to apply for voluntary departure? At the final hearing where the judge said that he's going to deny the continuance. That's September 2008. And that's at the administrative record at 52 to 55, this discussion. That's where the judge lays out his reason for denying the continuance, which is solely because this case has been pending too long, in his opinion. That's his gut feeling. Right. But why couldn't, at that point, your client have raised that issue with the BIA? He was so focused, I would say, on this issue of if you overturn my I-130, I'll be eligible for adjustment of status, that he didn't raise that issue. But it is a — it's, you know, it's a — But from a — I mean, maybe you know our exhaustion cases better than I do, but that doesn't seem to me to be an exception to the normal rule, that, well, I was focused on this other thing that was much more important, and so I just didn't get around to raising it. You know, all along the BIA is essentially, in a way, hiding the ball about what's going on with this appeal, or not intentionally. Maybe it was sitting on someone's desk, but it's sitting here for five years, and he's still hopeful, hopeful, hopeful, hopeful that he'll be able to adjust his status and that he'll be able to see this case out. So maybe there's not a case clearly on point saying that, you know, because he was focused primarily on this issue, he should be allowed to raise this other issue now. But given the equities of this case and the circumstances where this appeal just goes on forever, and everyone, including the BIA, is focused on the prejudice — only prejudice issue of the denial of the I-130, meaning no adjustment of status, I think it — and, again, this is just a legal issue here, so no factual record would need to be developed. I think that he should be allowed to raise the issue. Is there any reason he couldn't have raised both before the BIA? No. There's no — You're being honest. He was just focused on this other thing that was — And everyone was. And the BIA's decision, although they don't expel it out, the reason they find no prejudice, they just say there is no prejudice, and assuming that's because they know on the same day that they're, with their right hand, issuing the decision denying the appeal. But they don't even explain their reasoning for why there's no prejudice. So that could be an error on its own, but turning back to the denial of the continuance, I suppose the immigration judge looked at two previous continuances in this case, you know, based on the appeal, and he said, yes, there's good cause here, and the government said we don't oppose, there's good cause for the appeal here. The facts didn't change. One iota from those two continuances, the continuances that were filed in April of 2006 and February of 2007, both of those continuances were not opposed by the government, and they come to the final hearing. But I thought that last one was opposed. At the final hearing, the third one was opposed at the hearing in person. And what the government explains is that, you know, we didn't oppose it before. We thought we'd let this have some time to reach finality, but, you know, this is just dragging on too long, and that's the only reason they give for a change in their opinion. Meanwhile, it's the government itself that's causing it to drag on. So none of the other key factors have changed in the interim. You know, all the factors that the Ninth Circuit and the BIA lay out still were the same, you know, the prima facie approvability of the case, the admissibility and eligibility for adjustment of status, his equities here, his ties, his children. These factors all stay the same. The only thing that changes is more time has passed, and the fact that the more time has passed should actually be held against the government in this case because it's the government that's causing this delay. So to weigh that against my client is unfair. But that sounds like a rule that once you grant a continuance, you have to keep granting continuances. I mean, how do we know that they should have granted a continuance in the first place rather than just saying this claim is going to be meritless and denied the first one? Right. And what we should do is look at the factors that this Court and that the Board of Immigration and Appeals has laid out in Hashmi and in this Court in Rendon v. Holder and look at all those factors. The judge in this Court only looked at, in this case, only looked at one factor, time, maybe two factors, the opposition. But he didn't look at the full list of factors and consider them fairly. If you do look at them, most of them weigh in our favor. So I think I've addressed the prejudice issue. For a full explanation of the voluntary departure issue, it might be helpful to look at a case from the Supreme Court, Dada v. Mukasey. I just wanted to add that citation today. It's 554 U.S. 1, U.S. 2008. That case discusses voluntary departure prior to January 2009 when the regulations changed, and so that's the regime that was in place at the time. And if nothing else, I'll reserve the rest of my time for rebuttal. Okay.  Thank you. We'll hear from the government next. May it please the Court. My name is Ashley Martin. I represent the Respondent in this matter. I'd like to begin by addressing the argument concerning voluntary departure. I understand the Petitioner to be arguing that his client was put in the following position. He's before the immigration judge. He's offered the opportunity to apply for voluntary departure, which would require that he either leave the United States by a specified date or face strict penalties in the future, or remain in the United States and try to see out what happens with the appeal of the I-130 denial before the Board. That's incorrect. That's not the position that the Petitioner was in at that time. He could have left the United States under a voluntary departure grant and still seen out the resolution of the appeal of the I-130 denial. In particular, his wife, who was a United States citizen, was the party pursuing the appeal of the I-130 denial before the Board. That doesn't sound like a great choice to me. I mean, your wife and children or child, don't they have a kid together? Well, Your Honor, under the circumstances. How about if we say to you, I don't know if you have kids, but why don't you go to some other country for a year or two years? We have no idea how long this thing is going to last, and we'll let you know about the decision. I mean, that doesn't sound like a real option. I mean, if you were in those shoes, you wouldn't take that. You'd stay and wait it out, right? Well, there was no reason that he had to be in the United States. Oh, I know. But his whole life is here. His spouse is here. His kid is here. Why? I mean, the thought that, well, it was no big deal. You should have just gone off to some other country and waited. Well, Your Honor, I think that goes to the issue of whether or not the immigration judge acted within his discretion to deny the motion for a continuance to await the outcome of the appeal of the I-130. And when considering that issue, I think the most important thing is that ultimately the petitioner was not prejudiced by the immigration judge's denial of the continuance. We know now that, in fact, the Board actually affirmed the I-130 denial. So even if he had ---- Well, but, I mean, he's prejudiced in the sense that just you said you started out saying you were going to address the voluntary departure issue, and I just want to hear what you have to say on that. He says he's prejudiced because if the judge had granted that last continuance and he could have at least known what the outcome of the visa petition was, at that point he could have ---- I mean, there would be no other reason to wait. He could have taken voluntary departure then, but he was kind of put in this bind where he's put to this choice. You're right. Technically it was a choice, but it's an impossible one to ask somebody to do. And so if he had only been granted that continuance, voluntary departure would still be on the table. And that's what he's lost now, and so why don't you address that? Why isn't that prejudice, in other words? Your Honor, I think that you're ---- that you're saying that he was prejudiced because, yes, I would have to go to another country to await the resolution of the I-130 denial, and that's a hardship. I don't think that's a legally cognizable hardship in this case. There's no fundamental right to remain in the United States while these matters are being resolved. There's no right to immigrate to the United States. And I think it's noteworthy that in this case, at the time the continuance was denied, the district director had already denied the I-130 petition. And so the reason that's significant is that the Petitioner had already had a full and fair opportunity to litigate the I-130 petition before the district director. He had received process on that I-130 petition before the agency. He was waiting for the ---- was it that he was waiting for the BIA to rule on the appeal? Correct, Your Honor. He was waiting for the board to rule on the appeal. Yeah, but right. But, you know, hope sort of springs eternal, right? You're thinking that district director, he didn't know what he was doing. I mean, surely the BIA is going to see the merit of my position, and I'll get this relief, hopefully. And had he accepted voluntary departure and the board had ultimately agreed with him and reversed the denial of the I-130, he would not have faced a bar to coming back to the United States. He chose not to accept voluntary departure. He made a voluntary choice to remain here instead. He, on the record, waived the right to apply for voluntary departure. I, you know, the record is silent as to what any discussions between him and his attorney may have been about voluntary departure and the implications of waiving that may have been. But, you know, if that's something that he would like to raise, he can do that in a motion to reopen. Counsel, Judge Gould, if I could ask just a couple of questions. It might be technically not relevant, but still I want the answer for perspective. He's still here, right? Your Honor, I'm not sure whether or not he's still here. Okay. But he's got U.S. citizen kids? He has one United States citizen child that I'm aware of. Okay. Then criminal record? Not that I'm aware of, no. There's nothing in the record indicating that he has a criminal conviction. If we were to send this to mediation, is there any possibility that he and the government could work out something that would let him stay or stay longer or depart voluntarily? Well, Your Honor, he is an enforcement priority for the government because he – there's been a finding that he sought to obtain the approval of an I-130 that was based on a fraudulent marriage. Okay. Immigration fraud. Correct. Okay. Thanks. Well, I think that answers the questions I have. Thank you. I'd like, Your Honors, to put yourself in the shoes of the immigration judge at the time this sixth request for a continuance was made. At that point, the Petitioner had already been in removal proceedings for over five years. He had received five continuances at his request. At least two of those continuances were granted to await the outcome of the appeal of the denial of the I-130 before the Board. Those two continuances spanned over two years, between May of 2006 and September of 2008. Prior to that, he had received a continuance to respond to a notice of intent to deny that he received from USCIS before the June 20, 2005, denial of the I-130 petition. So he had received years of continuances for the outcome of the I-130 proceedings. Yeah. But it's not like he was – it's not like he wanted those years. He wanted the prompt decision, and it was the government's own fault for not giving him that. So I'm – you asked us to put ourselves in the shoes of the I-J. I mean, that doesn't make me particularly sympathetic to the government's position. Well, but the immigration judge was looking at a situation where the Petitioner had conceded removability as charged. In fact, he had conceded removability as an individual who had previously sought to be the beneficiary of an I-130 petition by means of fraud. He had – But is it – just out of curiosity, does it normally take as long as it did here for one of these appeals to be processed? Your Honor, I don't know the answer to that question. I believe at the time it did. I believe the adjudication times may be faster now. But – It was just a backlog at the time or something? It's my understanding that there was. But I don't know to a certainty. But the immigration judge was looking at a person who had conceded removability, including a removability charge that involved a fraud allegation based on that prior I-130. He had no applications for relief. He was not eligible for any form of relief. The delay was already at five years. And at that point, removal proceedings, you know, could go on indefinitely, you know, if continuances were going to continue to be granted. Well, if the government just didn't get around to finally deciding the appeal, I think that's what you mean. Well, I understand. I like it was for something that was his fault that it was taking this long, right? No, you're correct. You're correct. It's not his fault that this – that that appeal was pending before the Board for so long. But the Court actually alluded to situations like this in its decision of Ahmed. That's at 569F3D1009. And in Ahmed, the Court did consider a situation where there had been the denial of a visa petition. The beneficiary of that petition was in removal proceedings. And he requested a continuance, like the Petitioner in this case, to await the Board's resolution of that appeal. And the Court in that case said, well, you know, under these facts, that Petitioner had only received one 6-month continuance to await the resolution of the appeal, and the immigration judge denied the motion for a continuance. And the Court said, well, that was an abuse of discretion. You only gave him 6 months to await the outcome of that appeal. You need to give him a little bit longer. But the Court made a couple of observations that I think are relevant in this case. And the Court said, first of all, immigration judges are not obligated to continue removal proceedings indefinitely to await the outcome of the appeal of the denial of a visa petition. And that applies here, because here the immigration judge was ultimately faced with continuances that were extending the removal proceedings almost indefinitely. And the Court also said it's significant whether or not you're dealing with a visa petition or an I-130. I think in that case it was actually an employment visa petition. But it's significant if you're looking at a petition that was filed before or after the Petitioner was placed in removal proceedings. Now, in Ahmed, the petition had been filed before the commencement of removal proceedings. Here, the I-130 petition was filed after the commencement of removal proceedings. And that goes to the reasonableness of the Petitioner's conduct. I mean, here he's seeking status and classification as the beneficiary of an I-130 after he's been charged with removability. And it is also significant to his chances as to whether or not any appeal from the denial of the I-130 would be successful, because he was subject to the bar at 8 U.S.C. section 1154C for having previously sought classification based on a fraudulent marriage. He was also subject to the bar at 8 U.S.C. section 1154G, which generally bars the approval of an I-130 petition if the petition is based on a marriage entered into after removal proceedings were commenced. And that applied here as well. He was actually subject to both bars. In fact, the marriage on which this I-130 petition was based was entered into after the commencement of removal proceedings. You know, you haven't mentioned anything yet about any sort of barriers to us reaching the merits of the denial of the visa petition. I actually have serious questions about that. I don't know if you – maybe that's not important. You think we should just get to the merits and resolve the merits however we want to? No, Your Honor. Well, maybe you could address in the remaining time you have that. Certainly. I say I have about two and a half minutes. The 8 U.S.C. section 1252A1 limits this Court's jurisdiction to final orders of removal. The Board's denial of the I-130 appeal is not a final order of removal. But it is inextricably intertwined. I don't know what you would call it, but it's bound up in that final order of removal, right? Respectfully, I disagree, Your Honor. The Court took a look at issues that are inextricably intertwined in two cases that I'm aware of. One is Morales-Izquierdo. That's the case I'm thinking of. Why is that? That seemed to me it's not directly on point because it involves a different kind of application, an application for adjustment of status. But why is that different, any different from the situation we're facing here? It's different in a number of ways. This Court should distinguish Morales-Izquierdo. In that case, you had the denial of an adjustment application by USCIS. And the reason that USCIS denied it was because there was also, I think, a simultaneous reinstatement of a prior removal order. And that reinstatement caused the Petitioner in that case to be ineligible for adjustment of status. So he sought review of the adjustment denial in the district court on a writ of habeas. He sought review of the reinstatement order properly by filing a petition for review before this Court. Well, this Court took a look at the issues in both cases and said, well, you know, if we find that this reinstatement order was valid, then that resolves all of the issues pending before the district court. If we find that reinstatement order is valid, then that means that this individual was not eligible to adjust status by statute, end of story. So the Court's resolution of the issue properly before it necessarily resolved the issues before the district court. And conversely, if the district court had granted the Petitioner the relief that he sought before it on review of the adjustment application, in particular, if it had granted his request for a non-protunct order saying that he was eligible to adjust, then that would have indicated that the reinstatement order never should have been entered. So those issues truly were intertwined. Here, you have a very different situation. The district court's potential determination under the APA as to whether or not the does not resolve this Court's consideration of whether or not the denial of a continuance was within the immigration judge's discretion. Gershengorn Right. But we're okay. I mean, that's true. But aren't we being asked to enforce a final order of removal, and that it shouldn't be enforced if, in fact, he's entitled to this visa petition, right? I mean, in other words, if we were persuaded that the BIA erred by upholding the denial and that instead it should have been granted to him, then we wouldn't enforce the final order of removal that is properly before us. So that's, to me, how it just seemed to go hand-in-hand, the two separate proceedings that are at issue now. Harrington Oh, Your Honor, I see that I'm out of time. May I briefly respond? The reason that the Court should not take that course of action and take a look at the merits of the I-130 denial is that that would violate the statutory scheme of review that Congress has set up. The I-130 denial is not a final order of removal. The definition of a final order of removal is at 8 U.S.C. section 1101A47. The denial of the I-130 petition does not fit that definition. It does not order this individual removed. And Congress has also provided a means of review under the Administrative Procedure Act to seek review of the I-130 denial. The Petitioner has not availed himself of that means of review, and instead asks this Court to exercise jurisdiction over something that's not a final order of removal. That's not what Congress intended when it set up these different paths for seeking review. Roberts. Okay. All right. Thank you very much. Let's see. You have a good amount of time left for rebuttal. Thank you, Your Honor. First of all, I'd like to address your question, Judge Gold. My client has been removed from the United States. He now has two U.S. citizen children. He was removed last year after being arrested in front of his children. So he's no longer here. But if we were granted, you know, if we were prevailed in this case, we would ask that he be returned here so that he could be granted voluntary departure, strangely enough. But that's what we would be seeking. Secondly, just in regards to counsel's point regarding the bar at 1154G, that's not an absolute bar. That bar says if you're entering into a marriage after proceedings begin, you can only have the petition approved if you show by a higher level of proof that your marriage is real. And, of course, there's no question that the second marriage was real. They have kids together. And everyone agreed that the second marriage was real. So that's just a nonexistent issue in this case. Okay. So turning to the issue of should we consider the 204C or consider the denial of the I-130, I agree. The issues are inextricably intertwined. The denial of the motion to remand by the BIA and the denial of the direct appeal were both predicated directly on the denial of the I-130. That's the only reason the BIA gives for saying there's no prejudice, is because there's no I-130 approval. So the issue is one and the same. If they say yes, the I-130 should have been approved, then there's no final order of removal. So I — Is there automatically no final order of removal, or would there have to be a discretionary decision at that point? Well, what I'm saying is that they wouldn't have entered a final order of removal because the I-130 was — denial was necessary for their order. And there's no reason that when they're issuing these two decisions simultaneously that the petitioner, Mr. Behaken, should go running off to two separate courts and have the issue resolved in two separate places when one court can take a look at it and really we're looking at one and the same issue on that issue. So that's my position. I think that pendant jurisdiction is possibly applicable to this case, and I think it should be applied. If there's nothing else, that's all I have today. Could you just answer in a word or two the question I asked the government? Does your client have a criminal record — He does not. Okay. He's been — you said he was arrested, though? He was detained by ICE. Yeah, okay, got it. And then removed from the — That's why — yeah. That's why I asked, because you had said arrested in front of his kids. Right. So you meant they grabbed him for the — Well, yeah. We actually walked into their office to file a request for a stay, and they arrested him there. They later granted his stay, but by that point, he was so distraught that he left the United States. So that's where it's at. Okay. Thank you. Okay. Thank you very much, counsel, for your helpful arguments in this case. The case just argued will stand submitted. And —
judges: Gould, Watford, Friedland